USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

CARTIER, a division of RICHEMONT
NORTH AMERICA, INC.; AND
CARTIER INTERNATIONAL, B.V.,

        Plaintiffs,

    - against -

SYMBOLIX INC. d/b/a PARK CITIES
JEWELERS; AHMED M. SALEH;
AND JOHN DOES 1-5,

        Defendants.

------------------------------------- x

05 Civ. 2777 (RJH)

**MEMORANDUM OPINION
AND ORDER**

        Plaintiffs Cartier, a division of Richemont North America, Inc., and Cartier International, B.V. (collectively "Cartier" or "plaintiffs") move for an assessment of statutory damages and an award of attorneys' fees and costs against defendants Symbolix, Inc., d/b/a Park Cities Jewelers and its principal, Ahmed M. Saleh ("defendants") in connection with defendants' infringement of plaintiffs' "Cartier" trademark in violation of the Lanham Act. For the reasons stated below, plaintiffs' motion is granted in part.

### BACKGROUND

        On March 11, 2005, plaintiffs initiated litigation against defendants alleging trademark infringement and false designation of origin under sections 32(1) and 43(a)(1) of the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a)(1), respectively. These claims

related to Cartier's Tank Francaise line of watches. On April 5, 2005, plaintiffs moved for a preliminary injunction to prohibit defendants from modifying stainless steel Tank Francaise watches by mounting diamonds on the bezels and cases, polishing the watches in order to simulate Cartier's more expensive white gold Tank Francaise watches, and thereafter selling the modified watches. On June 1, 2005, the Court preliminarily enjoined defendants from altering and selling Cartier watches. *Cartier, div. Richemont NA, Inc., et al. v. Symbolix, Inc., et al.*, 386 F. Supp. 2d 354 (S.D.N.Y. 2005) ("Cartier I").

On September 29, 2006 the Court granted plaintiffs' motion for partial summary judgment finding that defendants' alteration and sale of a stainless steel Tank Francaise watch, whereby diamonds were added to the bezel and the watch was polished to make it appear to be a more expensive, white gold, diamond-encrusted Tank Francaise watch, constituted the sale of a counterfeit watch in violation of the Lanham Act. *Cartier, div. Richemont NA Inc., et al. v. Symbolix, Inc.*, 454 F. Supp. 2d 175 (S.D.N.Y. 2006) ("Cartier II"). The Court found, however, that such alterations made not in connection with a sale but at the request of a customer who already owned a stainless steel Tank Francaise watch fell outside the scope of the Lanham Act. *Id.* at 183–85. Based on the finding of a violation of the Lanham Act, the Court entered a permanent injunction of defendants' illegal activity. *Id.* at 186.

Plaintiffs now move for assessment of statutory damages and attorneys' fees pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117.

## DISCUSSION

**1. Damages**

Plaintiffs are entitled to recover actual damages for trademark violations under subsection 1117(a) and (b) of the Lanham Act, 15 U.S.C. § 1117. Subsection (a) provides for recovery of "(1) defendants' profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Under subsection (b) actual damages may be trebled where the trademark violation consists of the intentional use of a trademark, knowing such mark is a "counterfeit." 15 U.S.C. § 1117(b).

As an alternative to actual damages, plaintiffs may elect to recover statutory damages under subsection (c) of the Act in cases involving the use of a "counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(c). Statutory damages may be awarded in an amount of not less than $500 or more than $100,000 per counterfeit mark where the use is not willful. Where the use of the counterfeit mark is willful, the maximum amount of statutory damages is increased to $1,000,000 per mark. Plaintiffs have elected to seek statutory damages in the present case presumably because actual damages would be an exceedingly modest amount by any measure. Whatever the motive, plaintiffs are plainly entitled to recover statutory damages since, as the Court previously held, the sale of altered watches with the original "Cartier" mark retained on the face of the watch constitutes the sale of a counterfeit good. *Cartier II*, 454 F. Supp. 2d at 182; *see also Cartier v. Aaron Faber, Inc.*, 396 F. Supp. 2d 356, 359 (S.D.N.Y. 2005); *Rolex Watch U.S.A. Inc. v. Meece*, No. 95 Civ. 1058-T, 2000 WL 33582648, at *3–*5 (N.D. Tex. Jan. 25, 2000).

3

Subsection 1117(c), however, "does not provide guidelines for courts to use in determining an appropriate [statutory damage] award." *Gucci American, Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521–23 (S.D.N.Y. 2004). As guidance, many courts have considered the following factors for the award of statutory damages under an analogous provision of the Copyright Act: (1) "the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *John Wiley & Sons, Inc., et al. v. Kanzin Rukiz Entertainment and Promotions et al.*, No. 06 Civ. 12949, 2007 U.S. Dist. LEXIS 42095 at *6 (S.D.N.Y. June 12, 2007) (Gorenstein, M.J.) (collecting cases) (internal quotation marks and citations omitted).

Plaintiffs propose in the present case that the Court assess statutory damages based on an estimate of defendants' illegal profit which should then be trebled due to the willful nature of defendants' conduct. Plaintiffs estimate that defendants earned approximately $2,700 per sale and maintain that defendant Saleh admitted to six illegal sales. This would result in total profits of $16,200 trebled to $48,600. While plaintiffs' methodology is sensible, the factual predicates underlying their calculation are suspect. Regarding profits per sale, it appears from the one documented sale of an altered watch to plaintiffs' counsel's investigator that defendant Park Cities paid $2,300 for the original watch and paid $2,000 to have a third party polish the watch and add diamonds to the bezel. The watch was sold to the investigator for $5,000, resulting in a profit of $700.

As for the number of illegal sales, the record is murky. Plaintiffs claim that defendants sold six illegally-altered Cartier watches: plaintiffs' investigator purchased one, and defendant Saleh admitted in his first deposition to five sales. (Pl.'s Mem. in Supp. at 3; Saleh Dep. 15:22 to 17:25, Apr. 15, 2005). Defendants contend that Saleh's testimony refers to five transactions: three made by Symbolix, one of which was the documented sale to plaintiffs' investigators; and two made by Saleh through his prior company, Lakewood Jewelers, which operated during 2003. (Saleh Dep. 18:22 to 19:8.) Based on a review of Saleh's testimony, the Court agrees that the total number of suspect transactions was five, three made by Saleh through Symbolix and two made by Saleh through Lakewood. Regarding the three Symbolix transactions, Saleh contends that he was confused by counsel's questions at his first deposition—English not being his first language— and points to his subsequent testimony and affidavit, stating that two of the three Symbolix transactions were not sales of altered watches but mere alterations of watches already owned by customers who brought them into Sale's store and requested him to polish them and add diamonds to the bezel. Since the Court determined in its decision on summary judgment that such alterations were legal, defendants contend that statutory damages should not be assessed for those two transactions. (Defs.' Opp'n. Mem. at 2–3). Defendants further contend that the two alterations undertaken by Saleh through Lakewood Jewelers are not part of this case as Lakewood is not a party and the Court did not refer to these transactions in granting plaintiffs summary judgment. (*Id.* at 10.) On the record before it, the Court is unable to resolve the credibility issue regarding two of the three transactions made through Symbolix. Since plaintiffs have not met their burden of establishing that these transactions were infringing, the Court will not consider

them in calculating statutory damages. However, the two transactions made through Lakewood are fairly considered in assessing damages against Saleh. While Lakewood is not a party to this lawsuit, Saleh was directly responsible for the infringing sales and should be held accountable. *Cf. Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 n.7 (S.D.N.Y. 2004). In sum, the plaintiffs have established the existence of three infringing sales which resulted in approximately $2,100 in illegal profits.

Plaintiffs request that defendants' profits be trebled in calculating statutory damages because defendants' infringement was willful. On balance, the Court agrees. While defendants are correct that the line between the infringing and non-infringing alteration of a trademarked good is not well-defined, it is clear that defendants were well aware that they had crossed the line. Thus in response to plaintiffs' cease and desist letter, defendants' counsel stated that plaintiffs were "misinformed," that defendants "[did] not alter, add, modify, or recondition timepieces" and that such "accusations" may be "libelous." (Benschar Decl. Ex. B, Mar. 12, 2005.) Denial, deceit and false outrage are hardly the response of an innocent infringer. The Court does note that, once litigation began, defendants were cooperative in the production of available records and made no additional infringing sales. However, trebling of profits is appropriate to reflect the willful nature of the infringement and to deter others from similar violations.

## 2. Attorneys' Fees

Plaintiffs also seek an award of attorneys' fees although no submission was made regarding the amount of fees requested. Defendants contend that the statute does not provide for an award of attorneys' fees where a plaintiff seeks recovery of statutory damages under § 1117(c). While an award of fees is appropriate in actual damage cases under § 1117(a) or (b), some courts have concluded that attorneys' fees are unavailable under subsection (c). *See, e.g., Gucci America Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 522 (S.D.N.Y. 2004); *see also Rodgers v. Anderson*, No. 04 Civ. 1149, 2005 U.S. Dist. LEXIS 7054 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.) (collecting cases). While the court in *Gucci America* concluded that a separate award of attorneys' fees was not available under subsection (c), it nevertheless concluded that attorneys' fees was a factor that could be considered in determining the appropriate amount of statutory damages. The Court finds it unnecessary to resolve this interesting question of statutory interpretation since it concludes that a modest award of fees reflecting the modest amount of trebled profits is appropriate either as a separate award, or as a part of an award of statutory damages. The parties are directed to negotiate in good faith the amount of attorneys' fees to be awarded. Absent an agreement, plaintiffs shall file a submission regarding such fees by April 25, 2008 and defendants shall file a response 15 days thereafter.

## CONCLUSION

For the reasons stated above, the Court grants plaintiffs' motion for statutory damages [41] against defendant Saleh in the amount of $6,300 plus attorneys' fees in an amount to be determined by the Court.

SO ORDERED.

Dated: New York, New York
       March 31, 2008

Richard J. Holwell
United States District Court